### JONES v. MILLER.

1. A widow is not entitled to dower in lands of her husband, sold after marriage under the lien of a judgment obtained before marriage.
2. Judgment was obtained against an unmarried man in 1860, and after his marriage other judgments were obtained. Land and personal property were levied upon under these judgments and sold on the same day, the personal property realizing a sum more than sufficient to pay the ante-nuptial judgment. The advertisement mentioned the land first, but there was no evidence to show which was in fact first sold. *Held*, that the widow of the debtor was entitled to her dower, the burden of proving that the land was first sold being on the purchaser. McIver, A. J., *dissenting*.

Before KERSHAW, J., Abbeville, January, 1881.

Hon. T. B. Fraser, of the Third Circuit, took the seat of Mr. Justice McGowan, who had been of counsel in the cause.

Petition by Nellie H. Jones againt Jacob Miller for dower, filed in the Probate Court of Abbeville, June 17, 1879. The facts stated in the brief appear in the opinion of this Court. The Circuit decree, reversing the order of the Probate Judge, was as follows:

The demandant claims dower in lands in the possession of the defendants, who hold the same under a conveyance of the husband's title from the Sheriff of Abbeville County, made in pursuance of a sale under executions, founded on judgments against the husband, existing at the time of the marriage, and constituting liens on the lands prior thereto, but enforced by sale after the marriage.

The defendants claim that the right of dower arising subsequent to the lien of the judgments, is defeated by the Sheriff's sale and conveyance under the judgments.

It is said that we have no decision of this question in our own reports, and no statute affecting it, and that it must be determined according to the principles of the common law, and in this I concur.

Mr. Park, in his learned and authoritative treatise on the law of dower, says : " It is obvious that as the husband may, by alienating the lands at any time before marriage, or before the title of dower has attached, altogether intercept that title, and prevent its ever arising, he may, under the same circumstances, create derivative interests or charges which shall be good against the wife when her title to be endowed is complete by the death of her husband. Thus his leases, his statutes, or recognizances, are all binding on the wife, and she shall hold the lands assigned to her in dower, subject to them" (p. 236).

" The remedy by statutes merchant and staple and eligit, which are meant by the term " statutes " in the above extract, was by judgment and execution, or extent, for satisfaction of debts acknowledged by record, by virtue whereof the lands were delivered to the creditor, by process directed to the Sheriff and appreciated by the jury. At common law, lands were not subject to execution, though goods and chattels might be seized and sold by a writ of *fi-fa.* Lands descended to the heir were liable for the specialty debts of the ancestor, and by statute 3 and 4 W. & M. c. 14, the heir was made answerable for lands descended, and all devises made to the prejudice of creditors were avoided. Then the statute 5 Geo. 2 c. 7 enacted that lands, negroes and other hereditaments and real estates of persons indebted, should be liable for their debts in like manner as real estates are by the law of England liable by specialty, and subject to like remedies for seizing, selling, etc., as personal estates in the plantations are." *D' Urphey* v. *Nelson,* 4 *McC.* 129.

Since that act was passed, it has been the law of this State that there is no distinction between lands and personal chattels, but they are considered equally liable for the satisfaction of debts, and subject in the same manner to be seized and sold for that purpose, under the process of the courts.

There can be no difference in principle between the effect of a judgment by statute given before marriage, and that of the more efficient judgment now allowed the creditor, upon the claim of dower. If the former was to have its full effect according to its exigency, in derogation of the claim of dower, so must the latter prevail according to its exigency. Hence a sale in satisfaction of such judgment would transfer the land to the purchaser, relieved of the claim of dower, because the right of dower attached to the land when the lien of the judgment had already covered it, one of the incidents of which was a right to sell the land under execution in satisfaction of the judgment debt. The rights of the creditor under his judgment had become vested before the right of dower attached. It could not displace those rights and consequently it attached to the lands in the condition they then were, affected by the lien of the judgments, subject to the rights of the judgment creditors, and liable to be sold for the satisfaction of their debts. The right of dower attached subject to all these incidents, and hence it was divested or defeated by the sale.

Though this question has never been brought directly before the courts of review in this State, it is well settled that the claim of dower is subordinate to that of a mortgagee under a mortgage existing at the time of the marriage. She may come in and redeem the estate and then be endowed, but not till then. *Crafts* v. *Crafts*, 2 *McC*. 54. In many of the States the question has been made and decided in relation to judgments. 1 *Scrib. Dower*, 572; *Brown* v. *Williams*, 31 *Me.* 403; *Freem. Judg.* § 361.

It was said at bar that many of these decisions may be affected by the statute law existing in the States where they were made. While that may be true, yet those statutes, if they exist, in this particular are declaratory of the common law and consistent with it, as has been shown. It is not to be wondered at that the cases are uniform in this respect, not one appearing to the contrary, for if it were otherwise, it would result that a man might defeat the rights of his creditors, under the judgments of the court, by his voluntary act of marriage.

It was contended by the counsel for demandant that although the general rule may be as stated, yet that there are peculiar circumstances here which will save the rights of demandant.  There were some judgments and executions against the husband existing before the marriage, and some obtained after.  Besides the lands levied on, there were forty-four slaves advertised by the Sheriff with the lands, and some other personal property, to be sold under said executions.  All the property was sold the same day, and under all the executions. If the personal property had been first sold and the proceeds applied to the judgments entered before the marriage, they would have been satisfied and extinguished, and the land would have been sold under the judgments entered after the marriage.  In that case the demandant would have been entitled to her dower.  It is contended here that this court shall decree as if that had been done, because dower is a favored claim in the law.  There is no evidence as to the order in which the property was sold, except that the real estate was first mentioned in the Sheriff's advertisement.  It was to the interest of the creditors that the land should be first sold, because in that case it would be sold free from the right of dower and would command a higher price.  A judgment creditor has a right to select what property of his debtor shall be sold under his execution.  *McAliley* v. *Barber*, 4 *S. C.* 48 ; *Wagner* v. *Pegues*, 10 *S. C.* 262.  It may therefore be assumed that the creditors directed the sale in the order most consistent with their interests, in the absence of any better evidence on the subject.

But, if it were otherwise and the slaves were first sold, all being sold on the same day and under all the executions, there would have been no application of the purchase money, probably no payment, until all the sales were complete.  The executions would have been paid out of a common fund.  The purchaser, however, would have had the right to refer his purchase to any of the judgments under which the property was sold, and the creditors would have had a right to direct the application of the proceeds in accordance with their interests. Could Mrs. Jones at the time of the sale, having only a contingent right of dower, have invoked the intervention of a court

of equity, *quia timet,* to compel the creditors to adopt a different course in order to preserve her contingent right? There is no precedent for such a proceeding. The creditors had vested legal rights which entitled them to levy on and sell this property in satisfaction of their debts, in the manner most likely to produce that result, and it was well said that a contingent equity will never divest a legal right.

It is ordered and decreed that the judgment of the Probate Judge herein be set aside and reversed, and the petition be dismissed. Also ordered that the demandant do pay the costs of the proceeding and the costs of the appeal.

From this decree the demandant appealed upon the following exceptions :

1. Because his Honor the presiding Judge erred in holding that the existence of the judgments against the husband prior to marriage barred the widow's right of dower.

.2. Because if this was not error it is submitted that the sale just after marriage, *in invitum,* of more than a sufficiency of his personal property on the same day with the real estate should have been so applied, by operation of law, as to satisfy the antecedent judgments and let in the widow's claim of dower.

Messrs. *L. W. Perrin, J. C. Sheppard,* for appellant.

Messrs. *W. H. Parker, O. T. Calhoun, Burt & Graydon,* contra.

June, 17, 1882. The opinion of the Court was delivered by

Mr. Justice Fraser. In a case like the present, where parties stand entirely upon their technical rights, and these are dependant upon the exact facts of the case, it is to be regretted that so much has been left to mere inference, or as to which the Court must be governed entirely by presumption.

It appears from the " case " submitted to this Court, that H. A. Jones was seized of valuable real estate, and was the owner of a large number of slaves and other personal property ; that some time in 1860, judgments were obtained and duly entered

up against him to the amount of $17,000; that after these were entered up, to wit, on December 19, 1860, he intermarried with Nellie H. Jones, the demandant; that after the marriage other judgments to the amount of $20,000 or $30,000 were obtained and duly entered up against him; that these latter judgments were obtained early in 1861; that executions were duly issued on all of these judgments; that about March, 1861, H. A. Jones and wife left the State and never returned; that all the records in the proceedings in relation to said judgments were destroyed by fire at Abbeville, in November, 1872; that from such secondary evidence as could be obtained, it appears that the executions issued under the above judgments were duly levied on the real and personal estates of H. A. Jones; that the land appears first on the list of property as advertised for sale by the Sheriff; that the land and slaves were sold on sales-day in May, 1861; that the land was sold for about $9,000 or $10,000; that there were thirty-six slaves sold on that day, the average value of which was $500; that the remainder of the personal estate was sold several days after this sales-day, and that after all the proceeds of sales were applied, there was still a deficiency of about $10,000; and that H. A. Jones has died, leaving Nellie H. Jones, his widow, surviving him, who in this proceeding demands her dower in the lands of H. A. Jones, her husband, sold as above.

The Court has been left entirely to conjecture as to the true amount due on the oldest of the above judgments at the sale in May, 1861. If these judgments had been obtained early in 1860, the $17,000 might, by interest, have increased with costs to over $18,000, and may have reached the sum of $18,500. If the judgments had been obtained in December, 1860, the sum may not have been over $17,500. There is nothing, however, in the "Case" which shows whether $17,000 was an interest-bearing sum or the total amount of principal, interest and costs, at the date of the sales in May, 1861. As to the sale of the slaves on sales-day, in May, 1861, the statement in the "Case" is that there were thirty-six of them sold at an average value of $500 each. This is all the evidence on the subject, and it would be arbitrary for the Court to fix any other

than thirty-six as the true number, and $500 as the average value. The Court must, therefore, fix the amount of the sale of the slaves on sales-day in May, 1861, at $18,000. It must, therefore, be held that the slaves, sold on sales-day in May, 1861, as the property of H. A. Jones, under these executions, brought the sum of $18,000, an amount sufficient to extinguish the executions issued under ante-nuptial judgments, so far as there has been any *evidence* to fix the amount due on them at that date.

This Court concurs with the Circuit Judge in holding that the lien of these ante-nuptial judgments was paramount to the claim of dower in this case. This position is fully sustained by the authorities to which he refers in the Circuit decree. *Park on Dower*, 236; *Scrib. Dower*, 572; *Freem. Judg.*, § 361. The doctrine on this subject is correctly stated by Mr. Scribner (vol. 1, p. 572) as follows: "Where a judgment lien is acquired against the husband's land prior to his marriage, and the land *is sold subsequently thereto in satisfaction of the judgment debt*, the right of dower of his wife in the land is defeated."

While there is some difference between the statements in the Circuit decree and in the "Case" before this Court, as to the number of slaves sold, the same conclusion has been reached— that there was ample personal property sold on that day to pay off these older judgments if the proceeds had been so applied. When the widow demands her dower in her husband's land, and shows seizin of the husband, her marriage with him and his death, she is entitled to her dower unless the respondent can show *affirmatively* something which defeats her claim. The burden of proof is then on him. "The obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue." 1 *Green. Evid.*, § 74. "It applies to every fact which is essential or necessarily involved in that proposition." *Ibid.*, note. *Wilder* v. *Cowles*, 100 *Mass.* 487. Now the propositions on which respondent relies in this case are, first, that there were ante-nuptial judgments against the husband; and second, that this land was sold under them, or one of them. Unless these two things are made to appear affirmatively, the land is liable to dower. It cannot be inferred

that the land was sold first because it was first on the list of advertised property, especially when the writ of *fi-fa* mentioned the property (if it was properly made out) in the reverse order, "goods and chattels" being first mentioned and afterwards the lands, etc.

Neither is it a safe presumption that creditors sold the land first because it was their interest to do so. It may be safely presumed that the Sheriff did his duty, and sold for cash, each sale standing by itself and for itself, as each separate article or piece of property was sold. The Sheriff became, when the property was knocked down to a bidder, *prima facie* liable for the proceeds, and if in fact the money was paid afterwards, the application must have been made as of the very instant the sale was made. This applies to the land as well as the personal property. If, in fact, the land had been put up and bid off first, a subsequent compliance by the purchaser would have defeated the claim of dower, and made his title good. If the personal property had been put up and bid off first, then a subsequent compliance with the bid would have settled and paid off the older judgments and executions; and their liens on the land would have been just as effectually extinguished as if the money had then and there been paid when the bid was made.

If there had been no other property of the judgment debtor sold on sales-day in May, 1861, except this land for $9,000 or $10,000, there could be no doubt that the land was sold to pay these judgments and executions, amounting to $17,000, but personalty was sold on the same day and more than was sufficient to pay off these judgments and executions which antedated the marriage, and the Court cannot presume, in the absence of any proof on the subject, that the land was sold first, and the personalty last. If all the property sold had been land, and if instead of a number of slaves land to the value of $18,-000 had been sold in addition to the land now in dispute, by what principle could it now be held that these lands now in dispute were first sold? Clearly no such conclusion would follow without throwing on the widow the alternative of losing her dower in $28,000 worth of land when it could have been extinguished only, at most, in $17,000 worth, or of proving

the executions to each parcel, as the cases came up. The burden of proof is not on her but on him who alleges that her right has been extinguished by a sale under an existing lien. To deprive one of rights there must be proof, something more than a probability, that creditors did what they now know to have been their interest to do, but of which they have not preserved the evidence. At most nothing more than a probability has been shown, and this Court does not think that this is sufficient to defeat the widow's right of dower.

It is therefore ordered and adjudged that the judgment of the Circuit Court be reversed, and that the case be remanded to the Probate Court for such further proceedings as may be necessary and proper to carry out the judgment of the Probate Court herein.

MR. JUSTICE McIVER, *dissenting.* I cannot concur in the conclusion reached by the majority of this Court, and on the contrary, think that the Circuit Judge has taken the correct view of the case. I do not deem it necessary to add anything to what has been said by the Circuit Judge, except to say that, in my judgment, there was no sufficient evidence to warrant the conclusion that the personal property sold on the day the land was sold, brought an amount sufficient to satisfy the antenuptial judgments? Those judgments amounted to seventeen thousand dollars, but whether this was the amount at the time of the sale or the amount at the time of the recovery of the judgments does not distinctly appear. The statement in the " Case" is that " during the year 1860, and prior to the marriage, judgments to the amount of $17,000 were obtained, and this would indicate that seventeen thousand dollars was the amount recovered, which, of course, would bear interest from the time of the recovery. But exactly when the judgments were recovered does not appear, except that it was some time in 1860, prior to the marriage, which took place on December 19th, 1860. It does, however, appear, from the Statute Book, that at that time the Court for Abbeville, where those judgments were recovered, was appointed to be held on the first Mondays in March and October in each year (12 *Stat.*

262) and if the judgments were recovered in October, 1860, the interest to the first Monday in May, 1861, when the property was sold, to say nothing of the costs, would carry the amount over eighteen thousand dollars. And as it is not pretended that the personal property sold on that day brought more than eighteen thousand dollars, there would still be a balance due on the ante-nuptial judgments, even after applying to them the whole amount of the proceeds of the sale of the personal property, which would authorize the sale of the land under those judgments.

But in addition to this, I do not think that the evidence is sufficient to justify the conclusion that the personal property sold on the day the land was sold brought the sum of eighteen thousand dollars. The only testimony on this point, as derived from the "Case," is that thirty-six slaves were sold on the day the land was sold—the other personal property having been sold on a subsequent day—"and the witnesses estimated the average value of *a lot of negroes* at that time at $500"—not that such was the average value of *this particular lot of negroes*. Hence, in order to reach the conclusion that they brought eighteen thousand dollars, we must first infer, without any evidence from which to draw such inference, that this particular lot of negroes were of the average value, and next that they brought a full average value at Sheriff's sale—an inference not justified by experience, as it very frequently happens that property does not bring its value under the Sheriff's hammer.

It seems to me, therefore, that the judgment of the Circuit Court should be affirmed.

Judgment reversed.